UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| OMAR K. NEWLAND,<br><br>          Plaintiff,<br><br>          v.<br><br>AURORA LOAN SERVICES, LLC, *et al.*<br><br>          Defendants. | Civil Action No. 10-1352 (BAH)<br>Judge Beryl A. Howell |

**MEMORANDUM OPINION**

Plaintiff Omar K. Newland, a resident of the District of Columbia, brings this case alleging fraud and deception in the process by which he obtained a mortgage loan in 2007. The Amended Complaint names eight defendants: Lehman Brothers Bank, FSB, the plaintiff's mortgage lender, which is now bankrupt (hereinafter "Lehman Brothers"); Aurora Loan Services, LLC, the current servicer of the plaintiff's loan (hereinafter "Aurora Loan"); Atlantic Law Group, the employer of the substituted trustees; Mortgage Electronic Registration Systems, the nominee of Lehman Brothers and mortgagee of record (hereinafter "MERS"); Multi-Fund of Columbus, Inc., a mortgage brokerage (hereinafter "Multi-Fund"); Avion Johnson, a mortgage broker employed by Multi-Fund; First Ohio Banc & Lending, Inc., a mortgage brokerage (hereinafter "First Ohio"); and Tim Boyle, a mortgage broker employed by First Ohio. The Complaint argues that the defendants fraudulently conspired to provide the plaintiff with a higher interest rate than he should have received. Defendants Aurora Loan, MERS, and First Ohio have moved to dismiss the plaintiff's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of

1

Civil Procedure. For the reasons explained below, the motions to dismiss by Aurora Loan, MERS, and First Ohio are granted.[1]

## I. BACKGROUND

Plaintiff Omar K. Newland alleges that on or about October 9, 2006 he contacted Multi-Fund about obtaining 100% residential mortgage financing. Am. Compl. ¶¶ 4, 10. Mr. Johnson, the plaintiff's broker at Multi-Fund, informed the plaintiff that he was pre-qualified for a mortgage loan in an amount up to $685,000 and that he would "use his best effort" to locate a lender who would provide the plaintiff with one hundred percent mortgage loan financing. *Id*. ¶ 10. In return, the plaintiff agreed to pay Multi-Fund's one percent loan origination fee upon closing of the loan. *Id.* ¶ 10. Later in October 2006, Mr. Johnson informed the plaintiff that he had found a lender who would provide him with one hundred percent financing at an interest rate of 9.2 percent. *Id.* ¶ 11. When the plaintiff indicated that he felt this interest rate was high given his credit rating, Mr. Johnson agreed but stated that the rate was high because few lenders were willing to provide borrowers with one hundred percent financing. *Id.* The plaintiff claims to have relied on the "truth of that statement" in deciding to seek financing through Multi-Fund from the lender Mr. Johnson identified. *Id.*

In late December 2006, the plaintiff sent Mr. Johnson a copy of a sales contract for the purchase of a residential property at 1733 Trinidad Ave., N.E., Washington, D.C. ("the Property") for $590,000. *Id.* ¶ 14. Mr. Johnson informed the plaintiff that the 9.2 percent interest rate had expired and that the new rate was 9.3 percent, to which the plaintiff agreed. *Id.*

---

[1] This case was removed to this Court pursuant to 28 U.S.C. §1441(a), which provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." The Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds the jurisdictional threshold and the parties have complete diversity of citizenship. Venue is proper in this district because "a substantial part of the events . . . giving rise to the claim occurred" in the District of Columbia. 28 U.S.C. §1391(a).

2

The sales contract provided for January 31, 2007 as the settlement date for the purchase of the Property, and Mr. Johnson assured the plaintiff throughout the first three weeks of January that there was no reason that date would pose a problem. *Id.* ¶¶ 16-17. A few days before the scheduled closing, however, Mr. Johnson notified the plaintiff that there was a heavy volume of settlements scheduled for January 31 and the plaintiff's settlement would have to be postponed. *Id.* ¶ 18. Mr. Johnson told the plaintiff that he would not be charged *per diem* interest for the month of February, and the loan was scheduled to close on February 7. *Id.*

On January 18, 2007, Mr. Johnson sent the plaintiff a Department of Housing and Urban Development Good Faith Estimate (hereinafter "HUD Estimate"), which was dated October 17, 2006. *Id.* ¶ 17. The HUD Estimate did not disclose the "yield spread premium"[2] (hereinafter "YSP") at the top of the document where other forms of broker compensation were listed, but instead disclosed the premium – which Lehman Brothers would pay to Multi-Fund – "inconspicuously and deceptively" at the bottom of the page. *Id.* ¶ 24; *see* Superior Court Documents, ECF No. 4, Ex. A, (hereinafter "Superior Court Documents"), at 151. The plaintiff asserts that Mr. Johnson never informed the plaintiff that the higher interest rate of 9.2 percent, to which he had initially agreed because Lehman Brothers had committed to provide one hundred percent financing, would result in such additional compensation for the broker from the lender. *Id.* ¶ 25. Moreover, Mr. Johnson did not disclose to the plaintiff the definition of a yield spread premium, the reason Multi-Fund would be paid a yield spread premium, the cost to the

---

[2] A yield spread premium is "the present dollar value of the difference between the lowest interest rate a lender would have accepted for a particular transaction and the interest rate the consumer ultimately agreed to pay to the lender." *Nat'l Ass'n Mortg. Brokers v. Bd. of Governors of Fed. Reserve Sys.*, 773 F. Supp. 2d 151, 158 (D.D.C. 2011); *see also Nat'l Ass'n Mortg. Brokers v. Donovan*, 641 F. Supp. 2d 8, 10 (D.D.C. 2009) (A yield spread premium "is a payment by a lender to a broker that compensates the broker for originating a loan with an 'above-par' interest rate. The 'par rate' is the interest rate at which the lender will fund 100% of the loan with no premiums or discounts.").

plaintiff of the yield spread premium, or the fact that the plaintiff qualified for a lower interest rate in absence of the yield spread premium. *Id.* ¶ 26.

At the loan closing on February 7, 2007 the plaintiff learned for the first time that the loan had a prepayment penalty provision and refused to continue with the closing. *Id.* ¶ 19. The plaintiff contacted Mr. Johnson, who apologized for the oversight and stated that he would attempt to have the provision removed from the loan. *Id.* The following day, on February 8, Mr. Johnson informed the plaintiff that Lehman Brothers had agreed to remove the prepayment penalty on the condition that the 9.3 percent interest rate was raised to 9.8 percent. *Id.* ¶ 20. The plaintiff "believed that he had no choice at that point except to agree to the increased interest rate" and agreed to the new rate. *Id.* As an apology for his oversight and failure to inform the plaintiff about the prepayment penalty, Mr. Johnson told the plaintiff that Multi-Fund would reduce its loan origination fee from 1% to 0.5%. *Id.* On February 9, the plaintiff signed the documents necessary to finalize the loan for the purchase of the Property. *Id.* ¶ 21. Lehman Brothers paid First Ohio, who was the "actual Broker originating the loan," an incentive fee "of up to 0.125% of the loan amount after closing." *Id.* ¶¶ 22, 37.

The plaintiff made payments on the loan from the closing date until April 2009, at which point he defaulted on his monthly payments. Mem. Supp. Aurora Loan & MERS Mot. Dismiss (hereinafter "Aurora/MERS Mem."), ECF No. 7, at 2. Due to his default, a foreclosure sale on the property was scheduled for May 4, 2010. *Id.*; Am. Compl. ¶ 28.

One day before the scheduled foreclosure sale, on May 3, 2010, the plaintiff commenced this case by filing a complaint in the Superior Court of the District of Columbia. The plaintiff alleged, *inter alia*, fraud, deceit, connivance, unconscionability, breach of contract, negligence, and unlawful trade practices. Superior Court Documents, Ex. A, Compl. The plaintiff also filed

motions for a Temporary Restraining Order ("TRO") and a Preliminary Injunction enjoining the foreclosure sale. Superior Court Documents, at 56-69. The Superior Court denied the plaintiff's motion for a TRO and the foreclosure sale took place as scheduled on May 4, 2010. *Id*. at 7, 145; Aurora/MERS Mem., at 2. On May 21, 2010, the Superior Court denied as moot the plaintiff's motion for a Preliminary Injunction. Superior Court Documents, at 6.

On July 2, 2010, the plaintiff amended his Complaint, alleging in fourteen counts that the defendants engaged in conspiracy to defraud, fraud in the inducement and deceit (Counts 1-4, 6, 9); violated the D.C. Consumer Protection Procedures Act, D.C. CODE § 28-3901, *et seq*. (Count 5); and were negligent (Counts 9-12); and that the defendants Multi-Fund and First Ohio breached their fiduciary duty (Count 7). The plaintiff seeks cancellation of instruments and rescission (Count 8),[3] a declaration that the loan agreement is "unenforceable" since "it was procured by fraud, deceit, conspiracy and unconscionability" (Count 13), and issuance of a permanent injunction "setting aside the foreclosure sale in order to restore [plaintiff's] ownership rights" in the Property (Count 14).

Defendants Aurora Loan and MERS removed the action to this Court based on diversity of citizenship on August 11, 2010. Notice of Removal, ECF No. 1. Now pending before the Court are two motions to dismiss the plaintiff's Complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendants Aurora Loan and MERS have filed a joint motion asserting that the plaintiff's claims are barred by the applicable statute of limitations and that the plaintiff has failed to state a claim. Aurora/MERS Mem., at 4-5. Defendant First Ohio has also filed a motion to dismiss the Complaint for the same reasons. First Ohio Mem. Supp. Mot. Dismiss (hereinafter "First Ohio Mem."), ECF No. 11, at 1.

---

[3] This count alleges that the plaintiff has repudiated the mortgage contract by notice and refusal to perform his contractual obligations (in other words, failing to make his monthly payments) and that Aurora Loan has failed to honor his rescission of the contract. Am. Compl. ¶ 93.

5

Additionally, before the case was removed from Superior Court, defendant Atlantic Law Group filed a motion to dismiss for failure to state a claim, arguing that "all fourteen counts pled in the First Amended Complaint allege acts and omissions of the other Defendants" and, "aside from being identified . . . as a named party, there are no allegations of any acts or omissions by Atlantic Law under the Statement of Facts or any other allegations to support any of the Counts." Atlantic Law Mem. Supp. Mot. Dismiss, Superior Court Documents, ECF No. 1, at 4. The plaintiff has not filed an opposition to this motion. Defendants Multi-Fund, Mr. Johnson, Mr. Boyle, and Lehman Brothers have yet to appear or file responsive pleadings in this case.[4]

For the reason set forth below, the Court concludes that the plaintiff's claims are all barred by the applicable statute of limitations. Accordingly, the defendants' motions to dismiss are granted, and, because the plaintiff cannot possibly win relief against the remaining defendants, the plaintiff's Amended Complaint is dismissed in its entirety as to all named defendants.

## II. STANDARD OF REVIEW

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face" and to "nudge[ ] [his or her] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); FED. R. CIV. P. 12(b)(6). "[A] complaint [does not] suffice if it tenders naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009) (internal quotation marks omitted) (citing *Twombly,* 550 U.S. at 557). Instead, the complaint must plead facts that are more than "merely consistent with" a defendant's liability; "the plaintiff [must plead] factual content that allows the court to draw the reasonable

---

[4] The ECF docket indicates that the notices of removal sent to Mr. Johnson, Multi-Fund, and Lehman Brothers were returned as undeliverable. ECF Nos. 8-10.

inference that the defendant is liable for the misconduct alleged." *Id.* at 1949, 1940. The Court must "assume all the allegations in the complaint are true (even if doubtful in fact) . . . [and] must give the plaintiff the benefit of all reasonable inferences derived from the facts alleged." *Aktieselskabet AF 21. November 2001 v. Fame Jeans Inc.,* 525 F.3d 8, 17 (D.C. Cir. 2008) (internal quotations and citations omitted).

## III. DISCUSSION

Defendants Aurora Loan, MERS, and First Ohio assert that all of the plaintiff's claims are governed by D.C. CODE § 12-301(8), which provides for a three-year statute of limitations.[5] The plaintiff does not dispute that the three-year statute of limitations period applies, but rather argues that his claims "are all subject to the discovery rule for the purpose of tolling the statute of limitations until the fraud, and . . . common scheme to deceive and defraud the plaintiff was discovered, or should have been discovered through the exercise of reasonable diligence." Pl.'s Opp'n Aurora Loan Mot. Dismiss, ECF No. 13, at 2. The plaintiff is correct that the discovery rule applies, but the Court concludes that the plaintiff became aware, or should have become aware, of all the necessary facts underlying the defendants' alleged misconduct when he executed the loan documents on February 9, 2007. The plaintiff, however, filed his Complaint in the instant action on May 4, 2010, outside the applicable three-year statute of limitations.

An affirmative defense that claims are barred by the statute of limitations may be asserted in a Rule 12(b)(6) motion "when the facts that give rise to the defense are clear from the face of the complaint." *Smith-Haynie v. District of Columbia*, 155 F.3d 575, 578 (D.C. Cir. 1998). The face of the complaint must conclusively indicate that the complaint is time-barred. *Id.* at 578-79; *Doe v. U.S. Dep't of Justice*, 753 F.2d 1092, 1115 (D.C. Cir. 1985); *Performance Contracting,*

---

[5] D.C. CODE § 12-301(8) provides for a three-year statute of limitations period for all causes of action for which the statute does not otherwise provide a specified time period.

7

*Inc. v. Rapid Response Constr., Inc.*, 267 F.R.D. 422, 425 (D.D.C. 2010); *Lewis v. Bayh*, 577 F. Supp. 2d 47, 51 (D.D.C. 2008).

Statutes of limitations begin to run "from the time the right to maintain the action accrues." D.C. CODE § 12–301. The District of Columbia applies the "discovery rule" to determine when a tort cause of action accrues. *Hu v. George Washington Univ.*, 766 F. Supp. 2d 236, 241 (D.D.C. 2011). This rule provides that an action accrues when a plaintiff knew or should have known through the exercise of reasonable diligence of: "(1) the existence of the injury, (2) its cause in fact, and (3) some evidence of wrongdoing." *Bradley v. Nat'l Ass'n of Sec. Dealers Dispute Resolution, Inc.,* 433 F.3d 846, 849 (D.C. Cir. 2005) (citing *Bussineau v. President and Dirs. of Georgetown College,* 518 A.2d 423, 435 (D.C. 1986)); *Jung v. Mundy, Holt & Mance, P.C.*, 372 F.3d 429, 433 (D.C. Cir. 2004); *Hu,* 766 F. Supp. 2d at 241.

Under the discovery rule, "a plaintiff does not have 'carte blanche to defer legal action indefinitely if she knows or should know that she may have suffered injury and that the defendant may have caused her harm.'" *Hu,* 766 F. Supp. 2d at 244 (quoting *Hendel v. World Plan Exec. Council*, 705 A.2d 656, 661 (D.C. 1997). Rather, a plaintiff's cause of action accrues when the plaintiff is on "inquiry notice" of wrongdoing, which begins when "the plaintiff has reason to suspect that the defendant did some wrong, even if the full extent of the wrongdoing is not yet known." *Bradley*, 433 F.3d at 849 (quoting *Wagner v. Sellinger,* 847 A.2d 1151, 1154 (D.C. 2004)); *see also Hancock v. Homeq Servicing Corp.*, No. 05-cv-0307, 2007 WL 1238746, at *5 (D.D.C. Apr. 27, 2007) ("It is not necessary under the discovery rules that a party have notice of its specific legal claims: 'the focus of the rule is on when [the plaintiff] gained general knowledge [that she had been injured], not on when she learned of the *precise* legal remedies [for the injury],'" quoting In re Estate of Delaney, 819 A.2d 968, 982 (D.C. 2003)) (alterations

and emphasis in original). The determination of "[w]hat constitutes the accrual of a cause of action is a question of law," but "[w]hen accrual actually occurred in a particular case is a question of fact." *Hughes v. Abell,* No. 09-cv-0220, 2010 WL 4630227, at *9 (D.D.C. Nov. 16, 2010) (citing *Diamond v. Davis,* 680 A.2d 364, 370 (D.C. 1996)). The court therefore "must engage in a fact-specific inquiry to evaluate a party's 'reasonable diligence' in pursuing evidence of wrongdoing." *Id.*

The plaintiff alleges that (1) all the defendants engaged in conspiracy to defraud, fraud in the inducement and deceit, and violated the D.C. Consumer Protection Act, D.C. CODE § 28-3901, (Counts 1-6, 9); (2) that defendants Multi-Fund and First Ohio breached their fiduciary duties (Count 7); and (3) that all the defendants acted negligently (Counts 9-12).[6] Accepting the allegations in the Amended Complaint as true, and affording the plaintiff every favorable inference, the plaintiff was aware, or reasonably should have been aware, of the facts underlying each of these allegations when the plaintiff signed his final mortgage agreement on February 9, 2007.

### A. Plaintiff's Allegations of Conspiracy to Defraud, Fraud, and Violations of the D.C. Consumer Protection Act (Counts 1-6, 9) are Time-Barred

The plaintiff alleges that all the defendants conspired[7] and engaged in a common scheme to deceive and defraud the plaintiff for their own financial gain. Am. Compl. ¶ 35, 40.

---

[6] In Counts 8, 13, and 14 of the Amended Complaint, the plaintiff seeks remedies for the alleged misconduct, including cancellation and rescission of the mortgage contract (Count 8), a declaration that the loan agreement is "unenforceable" since "it was procured by fraud, deceit, conspiracy and unconscionability" (Count 13), and issuance of a permanent injunction "setting aside the foreclosure sale in order to restore [plaintiff's] ownership rights" in the Property (Count 14).

[7] Under District of Columbia law, civil conspiracy is not an independent tort action, but is rather "a means for establishing vicarious liability for the underlying tort." *Hancock,* 2007 WL 1238746, at *8-9 (quoting *Executive Sandwich Shoppe, Inc. v. Carr Realty Corp.,* 749 A.2d 724, 738 (D.C. 2000)). Thus, the statute of limitations for a conspiracy claim is "'established by the statute of limitations governing the underlying tort,' and begins to run when the plaintiff is on notice of the underlying injury." *Id.* at *9 (quoting *Thomas v. News World Commc'ns,* 681 F.Supp. 55, 73 (D.D.C.1988)). Plaintiff's allegations that the defendants conspired to defraud him are thus governed by the same three-year statute of limitations applicable to plaintiff's fraud claims.

9

Specifically, the plaintiff's fraud claims are premised on the allegations that the defendants failed to disclose the existence of a yield spread premium, *id.* ¶¶ 38-39, 44, 66-71, 79 (Counts 1, 2, 4, 5); failed to disclose that the plaintiff's original loan to purchase the property contained a prepayment penalty, *id.* ¶¶ 45, 56-60, 79 (Counts 2, 3, 5); failed to provide the plaintiff with the required HUD Good Faith Estimate and Truth-in-Lending disclosures before the February 7, 2007 closing date, *id.* ¶¶ 43-45, 55, 79 (Counts 2, 3, 5); and otherwise failed to disclose all material facts relevant to the mortgage loan transaction. *Id.* ¶¶ 40, 53.

"A claim of fraud must be brought within three years of when a plaintiff knows or through the exercise of due diligence should have known the fraud occurred." *Hu,* 766 F. Supp. 2d at 241. Here, the facts underlying the plaintiff's fraud claims were all known to him when he signed the final loan documents on February 9, 2007, and his claims therefore accrued as of that date.

Although the plaintiff alleges that his broker never disclosed the existence or conditions of the yield spread premium, the plaintiff signed a HUD Settlement Statement for his mortgage loan on February 8, 2007, which states on line item 811 that a $5,900 yield spread premium would be paid "by the Lender" to First Ohio. Superior Court Documents, at 156-57. On that date, the plaintiff was aware, or should have been aware through reasonable diligence, that a YSP was applied to his mortgage loan. With regard to the prepayment penalty on his original loan, the plaintiff himself states that he became aware of that provision on February 7, 2007, which is why he refused to close the loan transaction on that day. Am. Compl. ¶ 19. Additionally, all material terms and conditions of plaintiff's mortgage transaction, as well as the required HUD and Truth-in-Lending disclosures were provided to the plaintiff when he closed his loan on February 9, 2007.

Thus, accepting all allegations in the plaintiff's Amended Complaint as true, the plaintiff was or reasonably should have been aware of the alleged misconduct by February 9, 2007. *See Miller v. Pacific Shore Funding*, 224 F. Supp. 2d 977, 986 (D. Md. 2002) ("[A]t closing, [plaintiff] was charged all of the fees and expenses of which he complains. Therefore, that is the date on which the legally operative facts permitting the filing of [his] claims came into existence. Furthermore, the charges were all expressly identified in the closing documents. At closing, therefore, [plaintiff] also appears to have had sufficient knowledge of circumstances indicating he might have been harmed.") (internal citations and quotation marks omitted); *see generally Johnson v. Long Beach Mortg. Loan Trust 2001-4*, 451 F. Supp. 2d 16, 39 (D.D.C. 2006) ("In closed-end consumer credit transactions . . . the limitations period begins to run on the date of the settlement."). Pursuant to the three-year statute of limitations period, the plaintiff's time to assert his claims expired on February 9, 2010. The plaintiff, however, filed his Complaint on May 4, 2010. Consequently, his claims that the defendants conspired and acted to defraud him, as well as his claims under the D.C. Consumer Protection Statute, are time-barred.

### B. Plaintiff's Allegation that Defendants Multi-Fund and First Ohio Breached Their Fiduciary Duties (Count 8) is Time-Barred

The plaintiff alleges that defendants Multi-Fund and First Ohio breached their fiduciary duties to the plaintiff by: (1) failing to provide him with the best available mortgage rate; (2) failing to provide a "written document describing the service and agreement;" (3) failing to disclose the YSP fee and First Ohio's involvement in the loan; (4) charging fees for services "not reasonably related to the services performed;" (5) misrepresenting the reason the interest note offered by Lehman Brothers was higher than the plaintiff expected; and (6) failing to disclose the mandatory prepayment penalty provision of the original loan offer. Am. Compl. ¶ 86.

"The existence of a fiduciary relationship between a plaintiff and defendant, if one exists, 'does not alter the rule that the limitations period [begins] to run as soon as the [plaintiff is] on inquiry notice.'" *Hancock*, 2007 WL 1238746, at *5 (quoting *Ray v. Queen,* 747 A.2d 1137, 1142 & n.6 (D.C. 2000)). As stated earlier, Multi-Fund and First Ohio's fees, the YSP applied to the plaintiff's loan, as well as all of defendant Multi-Fund and First Ohio's other alleged failings were known to the plaintiff when he executed his mortgage documents. The plaintiff thus had inquiry notice of his claims as of February 9, 2007, the date he closed his mortgage loan transaction. Under the applicable three-year statute of limitations, this claim should have been asserted on or before February 9, 2010, which plaintiff failed to do. Consequently, this claim is time-barred.

### C. Plaintiff's Allegations that the Defendants Acted Negligently (Counts 9-12) are Time-Barred

Plaintiff also alleges that the defendants acted negligently and breached the duties of care that they respectively owed the plaintiff. Am. Compl., ¶¶ 110-11. This included breaching their duties of good faith and fair dealing, reasonable care, full disclosure, and their duty "not to violate the laws of the District of Columbia." *Id.* ¶ 110. The plaintiff does not specifically state the facts associated with his negligent claims, but states that each defendant's breach is "more particularly described in the other counts of this complaint." *Id.* ¶ 111. As explained above, the facts underlying the plaintiff's other counts were all known to the plaintiff at the time he executed his mortgage loan. The plaintiff's negligence claims therefore accrued on February 9, 2007, should have, but were not, brought before February 9, 2010, and are consequently barred by the applicable three-year statute of limitations.

Accepting all of the facts in the Amended Complaint, it is clear that the plaintiff's claims are time-barred. The plaintiff's claims accrued on February 9, 2007. Under the applicable three-

year statute of limitations, the plaintiff was required to assert his claims by February 9, 2010, yet he filed his Complaint on May 4, 2010. The plaintiff argues that "[i]n the absence of any allegations that plaintiff failed to bring his action or claim against [the defendants] within the applicable limitation period after he discovered the basis of the fraud and related claims, the motion must be denied." Pl.'s Opp'n Aurora Mot. Dismiss, ECF No. 13, at 2. There is no merit to this contention. Defendants Aurora, MERS and First Ohio alleged in their motions to dismiss that the plaintiff did not bring his claims within the statutory limitation period, and it is clear that the plaintiff was or should have been aware of the facts underlying his fraud claims as of February 9, 2007. Additionally, the plaintiff does not dispute that the terms of the plaintiff's mortgage were all known to him when he signed the final loan documents.

The statute of limitations has expired as to all of the plaintiff's claims. The motions to dismiss for failure to state a claim by Aurora Loan/MERS and First Ohio are therefore granted.

The Court also dismisses the Complaint as to the remaining defendants, who have not yet appeared in this case. In this Circuit, "[c]omplaints may . . . be dismissed . . . *sua sponte* . . . under Rule 12(b)(6) whenever the plaintiff cannot possibly win relief." *Best v. Kelly*, 39 F.3d 328, 331 (D.C. Cir. 1994) (internal quotations omitted); *see also Klute v. Shinseki*, No. 10-cv-1126, 2011 WL 2750932, at *4 (D.D.C. July 12, 2011) (citing *Best* in dismissing, *sua sponte*, the plaintiff's Americans with Disabilities Act ("ADA") claims against the federal government because the ADA does not consider the federal government an employer); *Moore v. Motz*, 437 F. Supp. 2d 88, 94 (D.D.C. 2006) (citing *Best* in dismissing, *sua sponte*, the plaintiff's claim against government officials for failure to fulfill campaign promises, as such a cause of action does not exist). Since all of the plaintiff's claims in this case are barred by the statute of limitations, he

"cannot possibly win relief" against any of the defendants. *See Best*, 39 F.3d at 331. Accordingly, plaintiff's Complaint is dismissed for failure to state a claim as to all defendants.

## IV.  CONCLUSION

The Court finds that the plaintiff's claims are barred by the applicable statute of limitations. Accordingly, the motions to dismiss by defendants Aurora/MERS and First Ohio are GRANTED. The plaintiff's Complaint is additionally DISMISSED *sua sponte* as to the remaining defendants because the plaintiff cannot possibly win relief. An Order consistent with this Memorandum Opinion will be entered.

**DATED: AUGUST 22, 2011**

/s/ *Beryl A. Howell*
BERYL A. HOWELL
United States District Judge